IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |
|---|---|
| RODERICK ISAAC, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. |
|  | : 2:04-CV-172-RWS |
| WARDEN NIX, in his Official and Individual Capacity as Warden of the Hall County Correctional Institute, *et al*., | : |
| Defendants. | : |

**ORDER**

Now before the Court are (i) Defendant Warden Nix's Motion to Dismiss [24-1]; (ii) Defendant's Motion to Stay Discovery [29]; (iii) Defendant's Motion for Summary Judgment [38]; (iv) Plaintiff's Motion for Leave to File Excess Pages [43]; (v) Defendant's Motion to Exclude Testimony of Dr. William S. Thompson [47]; and (vi) Plaintiff's Motion to Amend Complaint [50]. After considering the entire record, the Court enters the following Order.

AO 72A
(Rev.8/82)

**Background**

Plaintiff Roderick Isaac is a prisoner of the State of Georgia currently incarcerated at Burruss Correctional Training Center in Forsyth, Georgia. He alleges that he suffers from chronic hypertension which requires him to limit his exposure to severe heat and sunlight. In July 2002, Plaintiff was transferred to the Hall County Correctional Institute in Gainesville, Georgia ("HCCI"), where he was assigned to an outside work detail. According to Plaintiff, he informed his Counselor that he had a severe medical condition and was unable to perform such work, and allegedly requested a grievance form, but that request was denied. On September 26, 2002, Plaintiff suffered a stroke while performing outside manual labor. As a result, Plaintiff experiences chronic headaches, shortness of breath, numbness, and memory loss, and suffered permanent damage to his vision.

On April 7, 2004, Plaintiff filed an administrative grievance related to his work assignment and injury at HCCI. As this grievance was filed some nineteen months after the events giving rise to his claim occurred, it was denied by prison officials as untimely. Plaintiff appealed this denial, and his administrative appeal was similarly denied. On September 22, 2004, Plaintiff

filed this action under 42 U.S.C. § 1983 against James E. Donald in his official capacity as Commissioner of the Georgia Department of Corrections, Warden Nix in his official and individual capacities, and six other John and Jane Does in their official and individual capacities, who were providers of medical care and others at HCCI.[1]  Plaintiff contends that Defendants were deliberately indifferent to his medical needs in violation of the Eight Amendment of the United States Constitution and seeks damages in the amount of $750,000.00, injunctive relief, punitive damages in the amount of $1,000,000, as well as his costs and attorneys fees.

## Discussion

**I.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears

---

[1] Defendant Donald was dismissed from this action by Order of this Court.  (See Order of May 25, 2005 [22].)

'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In determining a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts.").

## II. Exhaustion of Administrative Remedies

Defendant contends that he is entitled to judgment as a matter of law because Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996).[2] In this regard, the PLRA provides:

---

[2] Defendant also moved to dismiss Plaintiff's complaint on the same grounds. However, Plaintiff alleged in his complaint that he exhausted his administrative remedies, and did not attach any exhibit to his complaint which would establish that he did not.

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)).  "This provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.' " Id. (quoting Booth v. Churner, 532 U.S. 731, 741 n.6, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001)).  In Johnson, the Eleventh Circuit expressly held that the § 1997e(a)'s exhaustion requirement contains "a procedural default component." Id. at 1159.  Thus, "[p]risoners must timely

---

Although Defendant originally contended that the failure to exhaust was jurisdictional, and as such, the Court could properly consider documents outside the pleadings, the Court need not decide this issue.  Consideration of such documentary evidence is clearly appropriate on a motion for summary judgment, and as such, the Court addresses that motion.

6

meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim." Id. " '[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating.' " Id. (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).[3]

Under the Georgia Inmate Grievance Procedures applicable to Plaintiff's claim, a grievance "must be filed within five (5) business days from the date the inmate discovers, or reasonably should have discovered, the incident giving rise to the complaint and was able to file the grievance." See Ga. Dept. of Corr. S.O.P. IIBO5-0001. It is undisputed that Plaintiff filed his inmate grievance on April 7, 2004, approximately nineteen months after the events which gave rise to his claim. The grievance form expressly requires inmates filing grievances outside the five-day time limit to explain the reason or reasons for the delay.[4]

---

[3] As the Johnson Court explained, " '[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.' " Id. at 1158 (quoting Pozo, 286 F.3d at 1025). " 'Any other approach would allow a prisoner to "exhaust" state remedies by spurning them, which would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem.' " Id. (quoting Pozo, 286 F.3d at 1023).

[4] The Inmate Grievance Form submitted by Plaintiff states: "Is grievance being filed within the 5 day time limit? Please answer Yes or No. If the answer is No, please explain why." (Def.'s Mot. for Summ. J. Ex. U.)

7

In response, Plaintiff stated, "I've been in the hospital. Medical is unsuccessful in restoring my eyesight." (Def.'s Mot. for Summ. J. Ex. U.) On the basis of this explanation, Plaintiff's Counselor recommended that Plaintiff's grievance be denied as untimely, stating:

> Upon review of inmate Isaac's grievance statement and GDC SOP IIB05-0001 on Inmate Grievances (Section IV.D.5), I find that this grievance shall be terminated. The relevant portion of the grievance procedure sited [sic] above states: "The form must be filed within five (5) business days from the date the inmate discovers, or reasonably should have discovered, the incident giving rise to the complaint and was able to file the grievance." Inmate Isacc's explanation for not filing his grievance within the five (5) business day limit is not sufficient explanation for his nineteen (19) month delay.

(Id. Ex. V.) The Grievance Coordinator concurred in this judgment, stating: "This grievance is way out of the five (5) work day time limit. This grievance should proceed no further." (Id.) Plaintiff appealed this determination, his stated basis for which was as follows:

> Due Process mandates that when a person suffers a chronic, lifelong injury, he may file an action at any time. . . . The courts have "ample discretion" to forego exhaustion of a (state grievance procedure) if you miss grievance deadlines. I was optimistically praying that my sight would be restored by medical

8

> procedures in time.  However, hitherto my condition
> has only gotten worse & dangerous in the 19 months
> mayhem.

(Id. Ex. W.)  Plaintiff's appeal was denied.  (Id. Ex. X.)

Plaintiff now offers this Court two explanations for his nineteen month delay which preceded his filing a grievance related to the injuries he sustained at HCCI: (1) his hospitalization and incapacitation resulting from his stroke, and (2) prison officials' refusal to provide a grievance form.  On the facts of this case, neither will support a finding of good cause sufficient to excuse Plaintiff's failure to exhaust his administrative remedies.

First, with respect to the reasons justifying his untimely filing which were actually provided by Plaintiff in his grievance form, he stated nothing more than that he "had been in the hospital," implying that he was physically incapacitated, and thus, unable to file a grievance form.  The record simply does not support that contention. Rather, the record shows that after his release from the hospital, Plaintiff was transferred to Lee State Prison, where sometime prior to February 2003 and approximately fourteen months prior to filing the grievance at issue here, Plaintiff filed a grievance related to his work assignment.  (See Id. Ex. I at 63-67.)  Moreover, on February 12, 2003, Plaintiff

was re-evaluated by prison medical staff and it was determined that he was "physically fit to perform any type [of] work." (Id. Ex. Q.) Immediately thereafter, on February 17, 2003, and again on April 7, 2003, Plaintiff sought authorization to be transferred back to a county work camp, stating that he was "perfectly able to go back to a county work camp and work." (See Id. Ex. R, S.) Viewing the facts in a light most favorable to Plaintiff as the non-moving party, the Court concludes that Plaintiff was physically able to file a prison grievance by February 2003.[5] In the absence of any explanation which would otherwise excuse the additional fourteen months that passed before Plaintiff filed his grievance, Plaintiff has failed to establish the good cause necessary to excuse his untimely filing.

The second justification Plaintiff offers with respect to his delay in filing his grievance is that prison officials affirmatively refused to provide the

---

[5] The information provided by Plaintiff in his appeal, similarly, offers no legitimate explanation for his delay. Rather, Plaintiff simply states that courts have "ample discretion to forego exhaustion of a (state grievance procedure) if you miss grievance deadlines." (Def.'s Mot. for Summ. J. Ex. W.) From this, it appears that Plaintiff operated under the misapprehension that, because his injuries were significant, he could simply file his grievance at any time, and rely on the Court's discretion to waive the exhaustion requirement. Contrary to Plaintiff's belief, this Courts lacks such discretion. See Johnson, 418 F.3d at 1155 (stating that § 1997e(a) "entirely eliminates judicial discretion and instead mandates strict exhaustion.").

required prison grievance form.[6] Even assuming that this is true, it is undisputed that Plaintiff filed a grievance related to his work assignment at Lee

---

[6] While unnecessary to its decision, the Court questions whether consideration of these proffered reasons at this point is even appropriate, in light of the fact that they were not provided to prison officials when he filed his grievance. The Eleventh Circuit has held that § 1997e(a) "require[s] that a prisoner provide with his grievance all relevant information reasonably available to him." Brown v. Sikes, 212 F.3d 1205, 1208 (11th Cir. 2000). As the Brown Court recognized, such a requirement furthers important policies favoring an exhaustion of remedies requirement, including,

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

212 F.3d at 1208 (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998)) (internal quotations omitted). Certainly, by failing to inform prison officials that he was denied grievance forms upon request, prison officials lacked the "necessary factual background" to properly evaluate the timeliness of his grievance, were unable to investigate that allegation and build a complete administrative record, and were denied the opportunity to correct their own errors. Moreover, the consideration of prisoner's justifications for failing to satisfy administrative requirements not presented in the administrative process leaves wide open the "possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." Id. Nevertheless, because the Court concludes that even considering these proffered justifications, Plaintiff's claim is barred by § 1997e(a), the Court need not decide this issue.

11

State Prison sometime prior to February 2003.  (See Id. Ex. I at 63-67.)  At the point Plaintiff was provided with this form, he was "able to file the grievance" within the meaning of the Georgia Prison Inmate Grievance Procedure.[7] Because Plaintiff failed to file the grievance within five business days of being provided with the grievance form, and because Plaintiff has failed to otherwise provide any explanation for a delay of fourteen months, the Court concludes that his grievance was untimely and that he has failed to satisfy the good cause standard under the Georgia administrative grievance procedures.  Under Johnson, Plaintiff's failure to either timely file his grievance claim or satisfy the good cause standard renders his claim "procedurally defaulted" and he is precluded by § 1997e(a) from bringing a § 1983 action for injuries arising out of these events.  Therefore, Defendant's Motion for Summary Judgment is hereby **GRANTED**.

---

[7] Plaintiff states that he was denied grievance forms by his Counselor at HCCI before his injury.  Assuming that to be the case, as the Court is bound to do at this stage of the litigation, the record before the Court is entirely devoid of any evidence that Plaintiff made any reasonably diligent effort–or, for that matter, any effort at all–to obtain a grievance form between his release from the hospital, his clearance to return to "any activity," and the actual filing of his grievance more than a year later.

### III. Remaining Motions

In view of the Court's resolution of Defendant's Motion for Summary Judgment, Plaintiff's Motion for Leave to File Excess Pages [43] is **GRANTED** *nunc pro tunc*; all remaining motions are **DENIED as moot**.

## Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment [38] is **GRANTED**; Defendant's Motion to Dismiss [24-1] is **DENIED as moot**; Defendant's Motion to Stay Discovery [29] is **DENIED as moot**; Plaintiff's Motion for Leave to File Excess Pages [43] is **GRANTED** *nunc pro tunc;* Defendant's Motion to Exclude Testimony of Dr. William S. Thompson [47] is **DENIED as moot**; and Plaintiff's Motion to Amend Complaint [50] is **DENIED as moot**.

**SO ORDERED** this  30th  day of March, 2006.

/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)